**Pamela Brown PONTON, Plaintiff,**

v.

**NEWPORT NEWS SCHOOL BOARD, et al., Defendants.**

Civ. A. No. 85–0064–NN.

United States District Court, E.D. Virginia, Newport News Division.

March 19, 1986.

Judy Bennett Spencer, The Hilton Law Group, Newport News, Va., Willafay McKenna, Peninsula Legal Aid Center, Hampton, Va., for plaintiff.

Phillips M. Dowding, Robert V. Beale, City Atty., Leonard A. Wallin, II, Asst. City Atty., City of Newport News, Newport News, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Pamela Brown Ponton, a teacher in the Newport News Public School System, has filed this action against the Newport News School Board and various employees of the Newport News Public School System. Plaintiff alleges that the defendants violated her rights by forcing her to take a leave of absence from her teaching position because she was single and pregnant. Plaintiff contends that this coerced leave constituted a violation of her constitutional rights to equal protection, privacy and due process and her statutory rights under 42 U.S.C. §§ 1981 and 1983, 20 U.S.C. § 1681 (Title IX of the Education Amendments of 1972) and 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964).

The matter has been tried before the Court and is accordingly ripe for disposition.[1]

## I. FACTS

Plaintiff was hired by the Newport News School Board in January, 1982 to teach vocational home economics at the Vocation-

---

1. The issue of damages was severed from the substantive claim.

al Education Magnet School in Newport News, Virginia. Plaintiff was single at the time.

In May of 1983, plaintiff, then unmarried, learned that she was pregnant. Plaintiff notified her superior, Lettie Booker, of her condition, but did not at that time notify the Personnel Department.

On June 11, 1983, plaintiff signed a contract with the Newport News School Board providing for her continued employment at her school for the 1983–84 school year. Such employment was to commence on August 30, 1983.

In the early part of August, 1983, Booker inquired of plaintiff if she had gotten married. Plaintiff informed Booker that she had not. Booker advised plaintiff that plaintiff should discuss her situation with the Personnel Department.

Plaintiff contacted Crawford Smith in the Personnel Department, who informed plaintiff that the School System dealt with such situations by giving the pregnant teacher three options: (1) get married, (2) take a leave of absence, or (3) resign. Mr. Smith, who at the time had the responsibility to recruit and staff middle schools, referred the plaintiff to Hattie Webb, who was the Personnel Coordinator for the Newport News School District and was responsible for granting leaves.

Plaintiff told Booker of the three options that Smith had communicated to her and Booker again advised plaintiff that she should contact the Personnel Department to see if there was anything they could do to help. Plaintiff stated that she did not feel there was any need for her to go to Personnel, whereupon Booker replied that she would contact the Personnel Department herself.

On or about August 23, 1985, plaintiff received a phone call from defendant Hattie Webb. Webb told plaintiff that she had heard rumors that plaintiff was pregnant, and that if plaintiff failed to come in for an interview, plaintiff would no longer be teaching. A meeting between Webb and plaintiff was scheduled for August 25.

Webb told plaintiff at the August 25 meeting that plaintiff would not be allowed to teach while she was single and pregnant as such a situation would set a bad example for plaintiff's students. When plaintiff asked what would happen if she refused to accept Webb's decision, Webb replied that she would take the matter up with Wiley Waters, her superior, who in turn would go to the School Board. Webb suggested that plaintiff take a parental leave of absence. Parental leave is characterized by School Board policy as a Category B type leave of absence. A teacher returning from a Category B leave of absence is not guaranteed her former assignment, but will instead be placed in a situation for which she is certified and qualified when such a vacancy appears.

Married pregnant teachers, unlike unmarried pregnant teachers, are given the option of taking a disability leave, which is a Category A type leave. Under this type of leave, the pregnant teacher is allowed to work until she becomes physically unable to do so. Also, under a Category A leave, the teacher is guaranteed that she will be able to return to her former job when the leave expires. Webb testified that plaintiff was not eligible for this latter type of leave because plaintiff was not married. Webb testified that she made no mention of Category A to plaintiff because plaintiff affirmatively sought a Category B leave. The Court finds that plaintiff did seek a Category B leave, but further concludes that plaintiff, by virtue of the information previously conveyed to her and substantiated by Webb's statements in reference to single pregnant teachers, did so under the mistaken view that her choice was limited.

On August 26, 1983, plaintiff submitted a written request for a parental leave of absence for the fall term of the 1983–84 school year. This request was subsequently approved by the Personnel Department and the School Board.

Plaintiff filed for unemployment benefits on August 24, 1983, claiming that she had been forced to take a leave of absence because she was single and pregnant.

Plaintiff was found eligible for such benefits on September 7. The School District appealed this ruling and a hearing was held on November 2. On November 4, the Virginia Employment Commission issued an opinion ruling that plaintiff had been forced to take a leave of absence because she was single and pregnant.

Plaintiff gave birth to a male child on December 15, 1983. On December 31, 1983, plaintiff married the child's father.

In November of 1983 and April of 1984, plaintiff requested that she be reinstated in a teaching position; however, no suitable positions were available at either of those times. On October 9, 1985, the School Board offered plaintiff a position teaching living skills at the Magruder Middle School. Plaintiff accepted the offer and began working at Magruder on November 1, 1985; she is currently still teaching at Magruder.

Plaintiff had filed a complaint with the EEOC on September 12, 1983 alleging that she had been discriminated against on the basis of her sex. On February 4, 1985, plaintiff received a Notice of Right to Sue from the EEOC. Plaintiff filed the instant suit on May 2, 1985.

The defendants to this suit are the Newport News School Board, Donald Bruno, current Superintendent of the Newport News Public Schools, Oliver Greenwood, former Superintendent of the Newport News Public Schools, Wiley Waters, Administrative Assistant for Personnel Services and Administration of the Newport News Public Schools, Hattie Webb, Personnel Coordinator for the Newport News Public Schools, and various individual current and former members of the Newport News School Board.

## II. MERITS

■ The first issue that must be decided is whether plaintiff was in fact forced to take the leave of absence, for if she took the leave voluntarily, plaintiff would have no claim against the defendants. The defendants contend that plaintiff agreed that she should not be teaching while she was single and pregnant and that she voluntarily took the leave of absence. There is some evidence which supports this contention. First, plaintiff did not attempt to appeal her leave through the school system's grievance procedure. Second, plaintiff applied for unemployment benefits on August 24, 1983—the day before she had her conference with Webb. The Court finds, however, that the evidence, taken as a whole, is sufficient to establish that plaintiff's leave of absence was involuntary.

First, although plaintiff did not file a grievance with the school system, she did file a complaint with the EEOC a few weeks after the commencement of her leave, charging the Newport News School District with sex discrimination. Such action would seem to have been reasonable, for an appeal through the school system's grievance procedure would have been futile if, as plaintiff believed, the discrimination against single, pregnant teachers was the product of a School Board policy.

Second, plaintiff was told by Crawford Smith that the Personnel Department dealt with single, pregnant women by presenting them with three options: (1) resign, (2) get married, or (3) take a leave of absence. Smith told plaintiff that a previous unwed, pregnant teacher had been dealt with in this manner.[2] Plaintiff had good reason to believe Smith's statements, not only because Smith worked in the Personnel Department, but also because he was the husband of a friend of plaintiff's. It was therefore reasonable for plaintiff to believe that, when Webb called on August 23 to arrange a conference, plaintiff was about to be forced to choose one of the three options about which she had been told by Smith. Plaintiff's decision to apply for unemployment benefits the day after her phone conversation with Webb was therefore not unreasonable.

It is also significant, not only that plaintiff applied for unemployment on August

2. Defendant Waters confirmed in his testimony     at trial that such an incident had occurred.

24, the day after she received the phone call from Webb, but also that plaintiff submitted her letter requesting a leave of absence on August 26, the day after her conference with Webb. There appears to have been a clear cause and effect relationship between plaintiff's conversations with Webb and plaintiff's decision to file, first, for unemployment, and then, for a leave of absence. Moreover, if plaintiff had intended to voluntarily take a leave of absence, it would seem that she would have requested it much earlier, for the Newport News School District's Memorandum of Understanding—the guide to School District policies and procedures—explicitly states that a teacher who wishes to take a leave of absence must request such leave no less than two weeks prior to the expected commencement of the leave. Plaintiff clearly did not comply with this requirement, for she requested her leave on August 26 and it became effective only four days later, on August 30—the day on which her employment for the 1983–84 school year was scheduled to begin. Finally, a finding of voluntariness would be inconsistent with the fact that it was Webb who contacted plaintiff, and not plaintiff who contacted Webb. Accordingly, the Court finds that the evidence establishes that plaintiff was forced to take an involuntary leave of absence because plaintiff was single and pregnant.

It therefore must be determined whether this involuntary leave constituted a violation of any of plaintiff's rights. The Court finds that the coerced leave did in fact violate at least two of plaintiff's rights; her constitutional right of privacy and her statutory right under Title VII against discrimination on the basis of sex.[3] The Court will address each of these issues in turn.

### A. Constitutional Right of Privacy

■ The constitutional right of privacy is "a right of personal privacy, or a guaran-

tee of certain areas or zones of privacy." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). This right protects individuals against undue governmental interference in personal decisions in areas such as marriage, *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), procreation, *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), contraception, *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), family relationships, *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and child rearing and education. *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The right to privacy is not absolute, however, for state regulation in these areas may be permissible if justified by a compelling state interest. *See Carey v. Population Services International,* 431 U.S. 678, 686, 97 S.Ct. 2010, 2016–17, 52 L.Ed.2d 675 (1977). In order to prevail on her constitutional privacy claim, plaintiff must establish that (1) the right of privacy includes the right to bear a child out of wedlock, (2) plaintiff was forced to take the leave of absence because she was single and pregnant, and (3) plaintiff's interest in exercising her constitutional right to bear a child out of wedlock outweighed the School District's interest in insuring that plaintiff was able to effectively and efficiently perform her teaching duties.

■ It is clear that the right to bear a child out of wedlock is protected by the Constitution. The Supreme Court has repeatedly noted that the right to privacy encompasses decisions regarding whether to have a child. *See, e.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct.

**3.** Although plaintiff could recover under either one of these theories, analysis of both of them would appear to be more prudent than reliance on only one. Moreover, the type of damages that may be awarded under § 1983 may differ from those authorized by Title VII. Discussion of plaintiff's constitutional claim and her Title VII claim is therefore appropriate. The Court will not, however, discuss plaintiff's potential claims under the equal protection clause, the due process clause, 20 U.S.C. § 1681 or 42 U.S.C. § 1981.

1678, 14 L.Ed.2d 510 (1965). This right to bear children extends to both single and married persons for, as the Supreme Court stated in *Eisenstadt v. Baird*, "[i]f the right of privacy means anything, it is the right of the individual, *married or single*, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972) (emphasis added).

Plaintiff therefore had a constitutional right to bear a child while unmarried. It is undisputed that plaintiff's exercise of this right was the reason she was forced to take a leave of absence, for if she had been either married and pregnant or single and non-pregnant she would not have been forced to take the leave. It must therefore be determined whether plaintiff's interest in exercising her right to become pregnant out of wedlock was outweighed by the School District's asserted interest in excluding plaintiff from the classroom.

■ It is now well established that public employment is not a privilege that can be made subject to unreasonable conditions. *See, e.g., Connick v. Meyers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Accordingly, public employees may not be compelled to forfeit all of their constitutional rights when they accept such employment. There are limits, however, to the extent to which public employees may exercise their constitutional rights when such exercise conflicts with their performance of their duties as employees. The Supreme Court has developed a balancing test for determining when the state may legitimately discharge a public employee for the exercise of her constitutional rights. Under this test, the teacher's interest in exercising her rights is balanced against the state's interest in promoting the efficiency of the public services it performs through its employees. *See, e.g., Connick v. Meyers, supra*, 461 U.S. at 142, 103 S.Ct.

at 1687; *Pickering v. Board of Education, supra*, 391 U.S. at 568, 88 S.Ct. at 1734.

The Court recognizes that school districts must be accorded a great deal of deference in regard to decisions affecting the management of schools. *See, e.g., Board of Education v. Pico*, 457 U.S. 853, 863–64, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982) (Brennan, J.); *id.* at 889, 102 S.Ct. at 2819 (Burger, C.J., dissenting); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 507, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). The school districts' authority in this regard is not unlimited, however, for it must be exercised in conformity with the Constitution. *See, e.g., Board of Education v. Pico, supra; Tinker v. Des Moines Independent Community School District, supra; West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

■ In this case, the particular state interest which has been alleged is that of protecting schoolchildren from exposure to a single, pregnant teacher. The Court has serious doubt as to whether this is in fact a legitimate interest. Even assuming that the asserted state interest is a valid one, however, the Court finds that it does not outweigh plaintiff's interest in exercising her constitutional right to bear a child out of wedlock.

It has not been alleged that the fact that plaintiff became pregnant out of wedlock indicated some moral defect in plaintiff which made her unfit to teach. Nor has it been alleged that plaintiff intended to openly advocate the virtues of pregnancy out of wedlock. Indeed, the evidence establishes that plaintiff was both desirous and anxious to marry her child's father. Rather, the sole allegation is that the mere sight of an unmarried, pregnant teacher would have a sufficiently undesirable influence on schoolchildren to justify excluding the teacher from the classroom. The Court finds this allegation to be meritless, for the effect on students of the mere sight of a single, pregnant teacher would be negligible, at best. To begin with, it is unclear

whether plaintiff's students would have even been aware that plaintiff was unmarried. Moreover, even if plaintiff's students would have known that she was single, the mere knowledge that their teacher had gotten pregnant out of wedlock would seem to have a fairly minimal impact on them. There was no evidence that plaintiff intended to proselytize her students regarding the issue of unwed pregnancy. Plaintiff's pregnancy would not have affected the School Board's authority to prescribe the curriculum for plaintiff's students, nor would it have affected plaintiff's ability to implement this curriculum in her classes. Finally, there was no danger that plaintiff's single, pregnant status could in any way be perceived as representing a School Board-sponsored statement regarding the desirability of pregnancy out of wedlock; rather, such status could only be viewed as representing a personal decision made by plaintiff in her private capacity.

It is interesting to compare the instant situation with other instances in which courts have refused to uphold school district discharges of teachers who had exercised their constitutional rights. In *James v. Board of Education*, 461 F.2d 566 (2d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972), a school district discharged a teacher who had worn a black armband to school to protest the Vietnam War. Similarly, in *Russo v. Central School District No. 1*, 469 F.2d 623 (2d Cir.1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1899, 36 L.Ed.2d 391 (1973), a teacher was discharged because she refused to recite the pledge of allegiance. In both cases the court found that the discharges impermissibly infringed upon the teachers' constitutional rights. There would not appear to be any appreciable difference in the degree of impact on students of the sight of a teacher either wearing a black armband, standing silent during the pledge of alle-

giance or being visibly pregnant. Similarly, there would also not appear to be any appreciable difference in the acceptability or unacceptability of whatever moral values might be reflected in such sights. It would therefore appear that the School District's interest in preventing plaintiff from exercising her constitutional rights in this case is no greater than the interests of the school districts in the above cases.

■ Moreover, it might be found that, if anything, the burden imposed on the exercise of the particular constitutional right involved is even greater in this case than in *James* or *Russo*. Although the Court does not suggest that beliefs can or should be exercised on a part-time basis, it is true that precluding the exercise of certain types of speech in the classroom does not necessarily prevent their exercise outside the classroom. If the teacher in *James* had been prevented from expressing his disapproval of the Vietnam War in the classroom, it would have still been possible to him to express his disapproval of that war outside of the classroom. This would not be true for the exercise of the constitutional right to become pregnant out of wedlock, however, for it is not possible to be visibly pregnant only outside of the classroom. Therefore, the exclusion from the classroom of a teacher who chooses to exercise this particular constitutional right would effectively mean that the teacher could not exercise this right at all if she wished to continue teaching. Accordingly, because the right to become pregnant out of wedlock is protected by the Constitution, and because the state interest asserted in support of the coerced leave of absence is, at best, very weak, the Court finds that plaintiff's constitutional right of privacy was violated when she was forced to take the leave.[4]

4. Even if it were true that the School District's interest in protecting school children from exposure to a single, pregnant teacher outweighed the teacher's right to become pregnant out of wedlock, this justification could only support excluding the teacher from the classroom for the period during which she was visibly preg-

nant. The leave that the plaintiff in the instant case was required to take provided that she initially take an entire semester off and that she would not be able to return to a teaching position in the School District until a position for which she was certified and qualified became available. In this particular case, plaintiff's

## B. Statutory Claim

■ Plaintiff also contends that her rights under 42 U.S.C. § 2000e–2 were violated when she was forced to take a leave of absence. Section 2000e–2 provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." The School Board and its employees clearly qualify as "employers" within the meaning of this section.[5] The leave of absence that plaintiff was forced to take clearly affected the "terms, conditions, or privileges" of her employment. It therefore must be determined whether plaintiff was discriminated against on the basis of her sex when she was forced to take a leave of absence because she was single and pregnant.

The procedure for assessing the validity of claims of sex discrimination under Title VII is well established. The plaintiff has the initial burden of establishing a prima facie case of discrimination. If the plaintiff is successful in establishing such a case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the act complained of. If the defendant does introduce a legitimate, non-discriminatory explanation for his conduct, the plaintiff must, in order to prevail, prove that this asserted justification is merely a pretext and that the real reason for defendant's conduct was a discriminatory one. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The first issue to be determined is therefore whether plaintiff has established a prima facie case of discrimination.

In 1978, Congress amended Title VII of the Civil Rights Act of 1964 by adding the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). This amendment provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." The Supreme Court, in considering the implications of this amendment, stated that, "[t]he Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Newport News Shipbuilding & Dry Dock Co. v. Equal Employment Opportunity Commission*, 462 U.S. 669, 684, 103 S.Ct. 2622, 2631, 77 L.Ed.2d 89 (1983).[6]

---

leave began on August 30, 1983, and she was not reinstated to another teaching position until November, 1985—two years and two months after she was forced to take the leave. Assuming that a woman is visibly pregnant for, at most, a period of six months, at least one year and eight months of plaintiff's leave cannot be justified by the rationale asserted in support of the leave.

Moreover, even if the School Board could legitimately force a teacher to take a leave of absence because she was single and pregnant, this would not mean that an individual School District employee—such as defendant Webb or Waters—could coerce such a leave without authorization from the Board. Therefore, since the Court finds that the coerced leave of absence was due, at least initially, to the unauthorized individual acts of defendants Webb and Waters, *see infra* pp. 1068–1069, the rationale asserted in support of the leave cannot insulate Webb and Waters from liability for their violation of plaintiff's constitutional right of privacy.

**5.** Section 2000e(b) of Title VII of the United States Code defines an employer for Title VII purposes as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." The School Board is an employer within the meaning of this section. Defendants Webb and Waters acted as the School Board's agents in making the decision to force plaintiff to take a leave of absence and are therefore also "employers" under Title VII.

**6.** This does not mean that all discrimination based on pregnancy necessarily violates Title VII; rather, such discrimination merely constitutes a prima facie case under Title VII. Discrimination based on pregnancy may be permissible under Title VII if it is supported by a legitimate, nondiscriminatory justification.

It seems clear that, in this case, plaintiff was discriminated against on the basis of her pregnancy, for plaintiff would not have been forced to take the leave of absence if she had not become pregnant. A policy such as that invoked by the Personnel Department could apply only to pregnant teachers.[7]

█ Since plaintiff has established a prima facie case of sex discrimination, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the manner in which plaintiff was treated. Indeed, the defendants do not advance any reason for the plaintiff's having taken leave as she did, other than that was her wish. The Court reiterates its rejection of this position. It is beyond question, in the Court's view, that the *true* reason was her pregnancy and unmarried status coupled with the expressed view that her teaching under those conditions would have been a bad moral example for her students. The Court has already discussed why such a concern is not a legitimate one. *See supra* pp. 1062–1063. Rejection of defendants' justification, as expressed by the Personnel employees to the plaintiff, is particularly appropriate in a Title VII case, for this Circuit has previously stated that "discrimination based on either immutable sex characteristics or constitutionally protected activities such as marriage or child rearing violate [Title VII] because they present obstacles to employment of one sex that cannot be overcome." *Earwood v. Continental Southeastern Lines, Inc.,* 539 F.2d 1349, 1351 (4th Cir.1976). The discrimination in the instant case was based on both an immutable sex characteristic—pregnancy—and a constitutionally protected activity—the right to bear a child out of wed-

lock. Accordingly, such discrimination must be considered a violation of Title VII.

## III. LIABILITY

Since it has been determined that plaintiff's constitutional and statutory rights have been violated, it must now be decided which of the defendants may be liable to plaintiff. As with the merits, the Court will discuss, first, plaintiff's constitutional claim and, second, plaintiff's statutory claim.

### A. Constitutional

Plaintiff's recovery for the violation of her constitutional right to privacy is authorized by 42 U.S.C. § 1983. This section provides a cause of action against any person who, under color of state law, deprives any other person of the rights secured by the Constitution. The Court will discuss, first, the potential liability of the School Board under § 1983 and, second, the liability of the various individuals named as defendants to this suit.

█ Municipal bodies are considered "persons" within the meaning of § 1983 and may therefore be subject to liability in suits brought under that section. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a municipality may only be held liable under § 1983 if the alleged deprivation was the result of a policy or custom of that body. A municipality is not liable for the unauthorized acts of its employees, for respondeat superior does not apply in actions brought under § 1983. Plaintiff may therefore only recover from the School Board for the violation of her constitutional rights if she can establish that her leave of absence was the product of a School Board

---

7. It might be argued that a policy which discriminates against unmarried, pregnant women does not constitute discrimination based on sex because the distinction it draws is not between men and women, but rather between pregnant persons and nonpregnant persons. Since women are included in the category of nonpregnant persons, such a policy does not discriminate against women. This line of reasoning, which was adopted by the Supreme Court in *Geduldig v. Aiello,* 417 U.S. 484, 496 n. 20, 94 S.Ct. 2485,

2492 n. 20, 41 L.Ed.2d 256 (1974), and *General Electric Co. v. Gilbert,* 429 U.S. 125, 134–35, 97 S.Ct. 401, 407, 50 L.Ed.2d 343 (1976), was found by the Court to have been explicitly rejected by Congress when it passed the Pregnancy Discrimination Act. *See Newport News Shipbuilding & Dry Dock Co., supra,* 462 U.S. at 676–82, 103 S.Ct. at 2627–30. This reasoning therefore cannot support a finding of nondiscrimination in this case.

policy or custom of excluding single, pregnant teachers from the classroom.

There are three ways in which a School Board policy or custom could be found. First, it could be shown that the School Board actually initiated the policy. Second, a policy or custom could be attributed to the Board if the policy was initiated by an employee who had the final authority to make the decision to force a teacher to take a leave of absence. *See Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980). Finally, the action of an individual employee could be imputed to the Board if it were established that the Board was aware of the employee's action and implicitly ratified it. *See Gilmere v. City of Atlanta*, 737 F.2d 894, 902 n. 22 (11th Cir.1984).

■ Plaintiff has not introduced any evidence showing that the School Board itself initiated a policy of excluding single, pregnant teachers from the classroom. The evidence introduced at trial does, however, support the conclusion that, at least among the administrators in the Personnel Department, it was understood that single, pregnant teachers would be excluded from the classroom. Crawford Smith, a Personnel Assistant in the Department, was the person who first informed plaintiff of this policy. Moreover, both Hattie Webb and Wiley Waters testified that they felt that single, pregnant teachers should not be in the classroom. And finally, a previous single, pregnant teacher had been excluded from the classroom, presumably at the request of the Personnel Department.

■ This unofficial Personnel Department policy cannot, however, be imputed to the School Board, for none of the employees in the Personnel Department had the power to initiate School Board policy; they only had the authority to administer policies enacted by the Board. The acts of individual employees may be considered to represent the policy of the municipality in those areas in which the employee is "the final authority or ultimate repository of ... power" for the municipality. *Familias Unidas v. Briscoe, supra*, at 404. None of the Personnel Department employees had

such power in this case, however, for it was the School Board that had the final authority over discharges and, it may be assumed, coerced leaves of absences.

■ Even though the Personnel Department did not have the power to initiate School Board policy, the Department's unwritten policy regarding unwed, pregnant teachers could be imputed to the School Board if it were shown that the Board was aware of this policy and implicitly ratified it. *See Gilmere v. City of Atlanta, supra*, at 902 n. 22. None of the evidence presented at trial, however, indicates that, at the time plaintiff was forced to take the leave, the School Board approved, or was even aware, of the manner in which the Personnel Department dealt with single, pregnant teachers.

It does appear that a previous single teacher had been treated in a manner similar to that in which plaintiff was treated in the instant case. There was, however, no evidence that the School Board played any role in either that case or the instant one. It is true that ultimate approval of leaves of absence rests with the School Board; however, it does not appear that there was any reason for the Board to have suspected that plaintiff's request for a leave was anything but voluntary, for there was nothing in plaintiff's letter requesting leave that indicated that her request was involuntary. In sum, plaintiff has not introduced sufficient evidence to warrant a finding that, at the time she was forced to take a leave of absence, there was a School Board policy or custom of excluding single, pregnant teachers from the classroom.

■ However, although the Board is not responsible for initially causing plaintiff to take the leave of absence, it does appear, as plaintiff argues, that the Board must have become aware at some point that plaintiff was claiming that she had been forced to take a leave because she was single and pregnant. The Board's failure to respond to plaintiff's claim could be interpreted as implicit approval of the Personnel Department's action. This approval

could therefore form the basis for holding the Board liable to plaintiff for some of the damages which she suffered.

The Board approved plaintiff's request for a leave on September 21, 1983. Plaintiff had been ruled eligible for unemployment benefits on September 7. The School District, through defendant Webb, appealed this decision on September 19. The Employment Commission held a hearing on November 2; defendants Webb and Waters testified at this hearing, and the School District was represented by an attorney. The Commission issued an opinion on November 4 finding that plaintiff had been dismissed because she was single and pregnant. In addition, plaintiff filed a complaint with the EEOC on September 12, 1983, charging the School District with sex discrimination. The EEOC investigated plaintiff's complaint. During this investigation, the School District was required to provide certain information to the EEOC.

It would therefore appear that, between the Employment Commission and the EEOC proceedings, the Board must have been made aware at some point—possibly even before it approved plaintiff's request for a leave—that plaintiff was challenging the legality of her leave. The Board's failure to take any action to remedy plaintiff's situation might therefore be found to constitute an implicit ratification of the Personnel Department's actions. Since a municipality may be liable under § 1983, not only for those policies which it initiates, but also for those which it implicitly ratifies, the Board could be liable for those injuries which plaintiff suffered after the Board became aware that plaintiff was claiming that her rights had been violated.

The difficulty with the above theory of liability, however, is that it appears that all of plaintiff's injuries are attributable to her initial leave, for there does not seem to have been anything the Board could have done to mitigate plaintiff's injuries once her leave was granted by the Personnel Department. As has already been noted, teachers who take a semester leave are not guaranteed that they will be returned to their former jobs, while teachers who take a disability leave are provided such a guarantee. Although it is unclear to the Court why these two types of leave are treated differently, it would appear that teachers who take a semester leave are replaced by permanent replacements, while teachers who take a disability leave are replaced by teachers hired on a temporary basis. Therefore, the reason a teacher who takes a disability leave is not guaranteed her job back is simply that her former position is no longer available.

Accordingly, when plaintiff took her leave of absence, her former position was filled by a teacher who had been hired on a permanent basis. Therefore, even if the Board knew that plaintiff had been treated unfairly, there would have been nothing it could have done about the situation, for it would have been improper for the Board to have created a vacancy for plaintiff by firing a teacher who had been legitimately hired. Plaintiff conceded at trial that, after her semester leave expired, she was returned to the first available position for which she was certified and qualified. Accordingly, because plaintiff has not established that the School Board became aware of plaintiff's claim at a time when it was still possible for the Board to have remedied plaintiff's situation, the Board is not liable to plaintiff under § 1983.

In addition to the School Board, however, plaintiff has also named numerous individuals as defendants, most of them in both their official and individual capacities. There is no need to discuss the liability of any of the individual defendants in their official capacities, for a suit against an individual in his official capacity is in reality a suit against the governmental entity which he represents. *See Kentucky v. Graham*, —— U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Since the Court has already discussed the School Board's potential liability, the only aspect of the individual defendants' liability that needs to be addressed is their liability in their personal capacities.

■ The only defendants who are liable to plaintiff in their individual capacities are defendants Webb and Waters. Plaintiff has introduced no evidence indicating any conduct on the part of Donald Bruno, the current School District Superintendent, Oliver Greenwood, the former Superintendent, or any of the current or former members of the School Board which would justify the imposition of personal liability on any of these defendants. Unlike the other individual defendants, however, Webb and Waters are liable to plaintiff in their individual capacities for the violation of plaintiff's constitutional rights, as they were both responsible for this violation.[8] Both Webb and Waters testified that they felt it was improper for a single, pregnant teacher to be in the classroom. They also appear to have been the two highest ranking officials in the Personnel Department, and it may therefore reasonably be inferred that they were the initiators of the Personnel Department's informal policy regarding single, pregnant teachers. Most importantly, it was Webb who told plaintiff that plaintiff would not be allowed to teach. Waters was aware that plaintiff was pregnant and unmarried and that Webb was going to have a conference with plaintiff. It may therefore be inferred that Waters knew that Webb was going to force plaintiff to take a leave and that he implicitly approved of this action. Accordingly, the Court finds that, because Webb and Waters were responsible for violating plaintiff's constitutional rights by forcing her to take a

leave of absence, they are both liable to plaintiff in their individual capacities under § 1983.[9]

### B.  Statutory

■ Plaintiff's recovery under Title VII differs from her recovery under § 1983 for, under Title VII, she may recover, not only from Webb and Waters, but also from the School Board. Section 2000e(a), as amended, includes governments, governmental agencies and political subdivisions as persons for Title VII purposes. The School Board has stipulated that it is an "employer" as defined in § 2000e(b). Further, as noted above, see supra n. 5, Webb and Waters are also "employers" under Title VII because they acted as the School Board's agents in their dealings with plaintiff.[10]

■ Defendants Webb and Waters are liable to plaintiff under Title VII for the same reason they are liable to her under § 1983, namely, because they were the ones who forced plaintiff to take the leave of absence. Moreover, the School Board is also liable to plaintiff for, unlike § 1983 where respondeat superior does not apply, Title VII imposes strict liability on the employer for the discriminatory acts of its agents. *See, e.g., Horn v. Duke Homes,* 755 F.2d 599, 605 (7th Cir.1985); *see generally* Development, *New EEOC Guidelines on Discrimination Because of Sex: Employer Liability for Sexual Harassment Under Title VII,* 61 B.U.L.Rev. 535, 538–43

8.  Webb and Waters were clearly acting under color of state law within the meaning of § 1983 when they violated plaintiff's constitutional right of privacy, for they were "clothed with the authority of state law" when they forced plaintiff to take the leave of absence. *See Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

9.  The School Board is not liable for any of this amount, as a municipality is not liable for an award against its employees in their individual capacities. *Kentucky v. Graham, supra,* 105 S.Ct. at 3106.

It appears that defendants Webb and Waters may have had a defense of qualified immunity. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Such a defense, however, must be affirmatively pleaded

by the defendant. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Webb and Waters have not done so in this case. The Court expresses no opinion as to whether such a defense would still be available at this time.

10.  That Webb and Waters were acting in their individual capacities when they violated plaintiff's rights does not affect their status as "employers" under Title VII, for the capacity in which the wrongdoer acted when the discrimination occurred is irrelevant, so long as the discrimination related to employment. *See Kelly v. Richland School District 2,* 463 F.Supp. 216, 218 (D.S.C.1978); *Hanshaw v. Delaware Technical & Community College,* 405 F.Supp. 292, 296 n. 10 (D.Del.1975).

(1981); Note, *Sexual Harassment and Title VII: The Foundation for the Elimination of Sexual Cooperation as an Employment Condition,* 76 Mich.L.Rev. 1007, 1025 (1978). Therefore, since Webb and Waters were the School Board's agents at the time they committed the discriminatory act, plaintiff may recover from the School Board itself, whether or not the Board played any affirmative role in the violation of plaintiff's Title VII rights.

### Conclusion

Plaintiff's constitutional right to privacy and her statutory rights under Title VII were violated when she was forced to take a leave of absence because she was single and pregnant. The School Board is only liable to plaintiff under Title VII. Defendants Webb and Waters, however, are personally liable to plaintiff under both § 1983 and Title VII.

The precise amount of damages to be awarded will be determined at a later hearing. Counsel are advised that the Court is tentatively of the view that plaintiff is entitled to only nominal damages under § 1983. Accordingly, it is suggested that counsel in their efforts to reach agreement as to the amount of damages and counsel fees to which plaintiff is entitled under Title VII concentrate on the statutory allowances.

An appropriate order shall issue.