Jerelynn BERTONCINI, Plaintiff,

v.

Mayor Carl SCHRIMPF, Village of Round Lake Beach, Donna Langel, William Beadle, John C. Thomas, Walter J. Antczak, and Richard Maston, Defendants.

No. 88 C 10942.

United States District Court,
N.D. Illinois, E.D.

May 4, 1989.

Dominic R. Fichera, Dominic R. Fichera & Associates, Michael G. Miller, Chicago, Ill., for plaintiff.

Alan O. Amos, Alan O. Amos & Associates, Donald L. Bertelle, Eve Moran, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Jerelynn Bertoncini, former Deputy Village Clerk and payroll clerk of the Village of Round Lake Beach ("the Village"), has filed a three-count complaint against various Village officials. In Count I she alleges sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., against Mayor Carl Schrimpf, Treasurer Donna Langel, and Trustees John Thomas, Walter Antczak and Richard Maston. In Count II she alleges a conspiracy by these defendants to violate her equal protection rights under 42 U.S.C. § 1985(3). In Count III she alleges libel per se against Mayor Schrimpf. The defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## FACTS

The allegations of the complaint are straightforward, and are taken as true for the purposes of this motion. Plaintiff began working for the Village on May 18, 1981. At some point prior to December, 1986, Mayor Schrimpf made unsolicited sexual advances to her. She rebuffed them, and in December 1986 the mayor's sexual advances ceased.

His harassment, however, did not. Instead, from December 1986 until plaintiff resigned the mayor and defendant Langel sought to embarrass, discredit and punish plaintiff for her refusal to engage in sexual relations with the mayor. The three defendant trustees knew of these activities, but took no action to prevent them. On March 18, 1988, while still employed with the Village, plaintiff filed a charge of sexual discrimination with the Illinois Department of Human Rights ("the IDHR") and the Equal Employment Opportunity Commission ("the EEOC") against the Village, alleging

that Mayor Schrimpf and an unidentified Village employee had taken action against her for having rejected the mayor's sexual advances.

On May 18, 1988, Diane Kuyper, a reporter with the Waukegan News Sun, reported that plaintiff had resigned her positions with the Village earlier in the month. In the article, Kuyper also reported statements Mayor Schrimpf had made to the Village Board regarding "irregularities" in connection with plaintiff's work as payroll clerk, irregularities which had been discovered during an independent audit of the Village payroll.

On August 10, Kuyper reported that the IDHR charge had been dismissed. In the article, Kuyper also quoted and paraphrased statements made by Mayor Schrimpf (apparently to Kuyper) that the Village was "still investigating additional offenses involving Bertoncini." Two days later, the mayor held a press conference in which he repeated that the discrimination charge against him had been dismissed, and then stated that some procedural irregularities on plaintiff's part were still being investigated. These statements were subsequently reported in the Round Lake News.

Plaintiff later withdrew her EEOC charge and received a right to sue letter from the EEOC giving her the right to file a judicial proceeding within 90 days. She filed this action within 90 days of receiving the letter.

## DISCUSSION

*Title VII*

The defendants assert a number of grounds for the dismissal of Count I, some applicable to all defendants and others pertaining to particular defendants. The court will address them in turn.

■ The defendants first argue that the Title VII claim is time-barred because plaintiff did not file her EEOC charge until March 1988, 15 months after Mayor Schrimpf's alleged sexual advances ended in December 1986, and thus well beyond the 180-day limitations period for bringing a charge. *See* 42 U.S.C. § 2000e–5(e). This argument misconstrues the nature of her Title VII claim.

Plaintiff does not predicate her claim on Mayor Schrimpf's sexual advances. She does not state that these activities offended her, nor does she assert that the sexual advances caused her to quit. Instead, plaintiff alleges here, as she did in her EEOC charges, that the wrongdoing against her lies in the defendants' conduct after plaintiff rebuffed Mayor Schrimpf, and that this conduct continued through the time that she filed her charge with the EEOC.

Contrary to the defendants' assertions, then, the complaint does not establish that plaintiff must have known of the basis of her claim in December, 1986. It may be that plaintiff was not bothered at all by the mayor's sexual advances, and that things became unbearable for her only when the mayor and Langel engaged in their alleged efforts to embarrass, discredit and punish her for her rejection of the mayor. *See Horn v. Duke Homes Division of Windsor Mobile Homes,* 755 F.2d 599 (7th Cir.1985). If so, then plaintiff can hardly be expected to have filed a charge with the EEOC before she discovered the discriminatory campaign against her. And the defendants, who allegedly participated in this continuing violation of plaintiff's rights, cannot rely on the statute of limitations as a defense to plaintiff's claims. *See Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 606 (7th Cir.1984).

■ Perhaps recognizing that allegations of a continuing campaign of harrassment would get plaintiff through the statute of limitations door, the defendants argue that the complaint here does not adequately plead such activity. This argument borders on frivolous.

Paragraph 8 of the complaint states:

That from December, 1986, until her resignation in May, 1988, and subsequent to Plaintiff rebuffing the sexual advances of the Defendant Carl Schrimpf, the Defendants, Carl Schrimpf with the aid of Defendant Donna Langel, did engage in

conduct intended to embarrass, discredit and punish the Plaintiff for her refusal to accept Defendant Schrimpf's sexual advances.

The defendants complain that this paragraph does not specify what conduct took place, and does not contain any facts showing a nexus between this conduct and Mayor Schrimpf's alleged sexual advances. It need not. Rule 8(a)(2) requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," which is precisely what paragraph 8 does. Plaintiff therefore has stated a timely claim for sexual harassment continuing through May, 1988.[1]

■] Langel and the trustees ("the unnamed defendants") next argue that the claims against them should be dismissed because plaintiff failed to name them in her charge to the EEOC. They note that, with certain exceptions, a party not named in an EEOC charge may not be sued under Title VII. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890 (7th Cir.1981). They argue that they do not fall within any of the recognized exceptions to this rule. As it turns out, the court need not reach this argument.

Title VII prohibits employers from discriminating against individuals on the basis of "race, color, religion, sex or national origin." 42 U.S.C. §§ 2000e-2(a), (b). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, and any agent of such a person...." 42 U.S.C. § 2000e(b) (emphasis added). A person is "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a).

There is no question that the Village is both a person and an employer under the statute, and therefore a proper defendant here. But plaintiff has not named the Village as a defendant; instead, she has named only Village officials. If by doing so she seeks to hold these defendants personally liable for violating Title VII, she may have a problem.

The Seventh Circuit has never addressed the question of whether individuals who are officers or officials of Title VII employers are themselves subject to personal liability under Title VII. *See Huebschen v. Department of Health and Social Services,* 716 F.2d 1167 (7th Cir.1983) (defendant not subject to Title VII liability where parties agreed that he was not an employer under the statute). Numerous other courts have faced this issue, but they have split on the answer.

The courts holding that a plaintiff may bring suit against individual defendants have noted that, although Title VII provides for actions only against employers, its definition of employers includes persons who employ more than 15 people, and agents of such employers. They have thus held that individuals who participate in a Title VII violation may be held personally liable for this wrongdoing along with their employers if the individuals are supervisory or management level officers—i.e., agents of the employer for the purposes of personnel decisions. *Hamilton v. Rogers,* 791 F.2d 439, 442 (5th Cir.1986); *Tafoya v. Adams,* 612 F.Supp. 1097 (D.C.Colo.1985), *aff'd,* 816 F.2d 555 (10th Cir.1987); *Anderson v. Phelps,* 655 F.Supp. 560 (M.D. La.1985); *Ditch v. Board of County Commissioners of County of Shawnee,* 650 F.Supp. 1245, 1251 (D.Kan.1986); *Acampora v. Boise Cascade Corp.,* 635 F.Supp. 66 (D.N.J.1986); *Ponton v. Newport News School Board,* 632 F.Supp. 1056, 1068 (E.D. Va.1986); *Thompson v. International Association of Machinists,* 580 F.Supp. 662

---

**1.** Of course, the fact that the defendants' statute of limitations argument fails at this stage does not mean that it cannot be asserted as an affirmative defense. If the facts establish that all of the wrongdoing against plaintiff ended more than six months before she filed her charge in March, 1988, then the defendants may well prevail on a statute of limitations defense, either by summary judgment or at trial.

(D.D.C.1984); *Jeter v. Boswell,* 554 F.Supp. 946, 952–53 (N.D.W.Va.1983); *Guyette v. Stauffer Chemical Company,* 518 F.Supp. 521, 525–26 (D.N.J.1981); *see also Romain v. Kurek,* 772 F.2d 281 (6th Cir.1985); *Hendrix v. Fleming Companies,* 650 F.Supp. 301, 303 (W.D.Okla.1986) (individual defendants guilty of misfeasance, as opposed to nonfeasance, are personally liable under Title VII; but individuals who merely allow activity to occur are not); *Feng v. Sandrik,* 636 F.Supp. 77 (N.D.Ill.1986).

Courts holding that individuals are not subject to personal liability have focused on the fact that only equitable relief is available for Title VII violations. Section 2000e–5(g) provides that when a court finds a violation of Title VII it may "order such affirmative actions as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court may deem appropriate." Since reinstatement is obviously available only from the employer-entity, and even back pay would seem to be something that the entity would generally provide, these courts have read Title VII as precluding actions against individuals (unless, of course, the employer is a sole proprietorship or a partnership, in which case the individual *is* the employer). *See Williams v. City of Montgomery,* 742 F.2d 586, 589 (11th Cir.1984); *Clanton v. Orleans Parish School Board,* 649 F.2d 1084 (5th Cir.1981); *Williams v. Hevi–Duty Electric Co.,* 668 F.Supp. 1062, 1070 (M.D. Tenn.1986) (supervisor cannot be personally liable under Title VII because the "employer guilty of a violation of Title VII is the one against whom affirmative relief, including back pay, may be adjudged"), *rev'd on other grounds,* 819 F.2d 620 (6th Cir.1987); *Bradley v. Consolidated Edison Company of New York, Inc.,* 657 F.Supp. 197, 207 (S.D.N.Y.1987).

This court, however, need not resolve at this juncture the potential personal liability of individuals who work for an employer-entity. In *Suarez v. Illinois Valley Community College,* 688 F.Supp. 376 (N.D.Ill. 1988), this court explained that although the official/individual capacity distinction is most often employed in cases arising under 42 U.S.C. § 1983, it is applicable as well in the Title VII context. *Id.* at 379–80; *see also Bradley v. Consolidated Edison Company of New York, Inc.,* 657 F.Supp. at 207 (Title VII plaintiff can sue supervisors in their representative capacities). Thus, when a plaintiff brings a Title VII suit against an individual in his official capacity, her suit is against the entity for which the individual works. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981).

Because pleadings are often ambiguous as to whether an official issued in his official or individual capacity, *see Conner v. Reinhard,* 847 F.2d 384, 394 n. 8 (7th Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988), the Seventh Circuit has created a rebuttable presumption that a suit against an official is an official capacity suit, *Kolar v. City of Sangamon,* 756 F.2d 564, 568 (7th Cir.1985), and therefore seeks recovery only from the entity. Here, this presumption controls. The heading of the complaint includes the names of the defendants along with their positions in Village government. Furthermore, the fact that plaintiff named the Village in her EEOC charge, but then did not include it in her complaint, strongly suggests that she seeks liability against the Village through the individual defendants. *See Volk v. Coler,* 845 F.2d 1422, 1436 (7th Cir.1988) (employer is strictly liable for sexual harassment by supervisory personnel). Thus, the court finds that plaintiff has sued the defendants in their official capacities, and accordingly that the only real defendant in this case is the Village.

Given this construction of the complaint, the court need not decide whether the defendants could be held personally liable for the alleged Title VII violations. Nor need the court determine whether plaintiff's EEOC charge sufficed to permit plaintiff to

sue the unnamed defendants in their individual capacities. The charge named the Village, and the complaint seeks to impose liability on the Village. There is therefore no reason to dismiss any of the defendants from the Title VII claim on the grounds that they were not named in the EEOC charge.

*Section 1985(3)*

Count II alleges that the defendants conspired to violate plaintiff's right to the equal protection of the laws, and seeks recovery against them under 42 U.S.C. § 1985(3). Section 1985(3) provides, in relevant part:

> If two or more persons in any state or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The defendants argue that this claim must be dismissed because plaintiff has alleged only that the defendants discriminated against her because she rejected the mayor's sexual advances, not that they discriminated against her because she was a woman. According to the defendants, the allegations therefore allege only individual mistreatment, not the sort of class-based animus outlawed by the Equal Protection Clause. They rely for this argument on the Seventh Circuit's opinion in *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167 (7th Cir.1983).

In *Huebschen,* the Court held that a male employee had not established sexual discrimination by a female supervisor. The employee and the supervisor had been involved in a romantic relationship, but when the relationship turned sour, the supervisor reacted with a vengeance. The Court determined that the supervisor's conduct demonstrated an animus toward her former lover, not an animus to men:

> The proper classification, if there is one at all, was the group of persons with whom [defendant] had or sought to have

an affair. It was this group, of which [plaintiff] may have been the only one, that [defendant] sought to disadvantage. As unfair as [defendant's] treatment of [plaintiff] may have been, we are simply not persuaded that the Equal Protection Clause should protect such a class.

*Id.* at 1172.

Although *Huebschen* could be read as a broad statement that one individual's mistreatment of another based on a personal dispute between the two will never amount to an equal protection violation, the Seventh Circuit has since rejected such a reading of the case. Instead, the Court has stressed that *Huebschen* involved a *consensual* romance turned sour, and has made clear that "[d]iscrimination and harassment against an *individual* woman because of her sex is a violation of the equal protection clause." *Volk v. Coler,* 845 F.2d 1422, 1433 (7th Cir.1988) (emphasis in original); *cf. Horn,* 755 F.2d at 604 (termination of woman following rejected sexual advances violates Title VII).

Because *Huebschen* and the quoted portion of *Volk* deal with claims under § 1983 rather than § 1985(3), one further point must be made. The Supreme Court has held that § 1985(3) claims must be predicated on conspiracies involving "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). This does not mean, however, that a § 1985(3) plaintiff must prove mistreatment of an entire class. It simply means that the plaintiff must prove that the characteristic for which she was mistreated makes the discrimination against her invidious. The Seventh Circuit has held that discrimination based on sex is invidious discrimination within the scope of § 1985(3). *Volk v. Coler,* 845 F.2d at 1434.

Here, plaintiff has alleged that she rejected Mayor Schrimpf's sexual advances, and that because of this rejection he embarked on a course of activity to embarrass, discredit and punish her. These allegations take this case outside the limited holding in *Huebschen,* and suffice

to state a claim that he (and those who conspired with him) discriminated against plaintiff because of her sex.

Indeed, the defendants seem to recognize that the complaint alleges discrimination based on sex. In their challenge to Count II, the defendants argue that "while [the allegations] may be sufficient for a claim brought under Title VII for employment discrimination, it is not adequate to state a cause of action under Section 1985(3) for violation of her right to Equal Protection." This is curious, for both Title VII and § 1985(3) prohibit the same thing: discrimination based on sex. Thus, because the complaint alleges discrimination in violation of Title VII, it alleges discrimination in violation of § 1985(3) as well.[2]

■ More curious even than the defendants' argument is plaintiff's concession that Count II fails to state a § 1985(3) claim. Generally, when a party concedes to dismissal of a claim, this court abides that request. Here, however, the court will not do so. Plaintiff obviously does not believe that her complaint fails to allege discrimination based on sex: if she did she would have moved to dismiss her Title VII claim as well. Thus, plaintiff's concession appears predicated on her failure to discover the limited reading that the Seventh Circuit has given to *Huebschen.* Although plaintiff is responsible for doing her own research, dismissing her complaint on this ground would be pointless, for she has indicated that she plans to amend her § 1985(3) claim to plead around *Huebschen.* To force her to do so when she has already stated a claim would serve only to delay the litigation unnecessarily.

■ Before leaving Count II, one further issue requires discussion. Above, this court found that the complaint named the defendants only in their official capacities. This means that the Village is the only real defendant in the case. But if so, then how can there be a § 1985(3) conspiracy?

The answer begins with the fact that a municipality can be held liable for the wrongdoing of its employees under § 1985(3). Although the Seventh Circuit has not decided whether the basis for this liability is a "policy, practice or custom," as required in § 1983 cases, or instead respondeat superior, *see Bell v. Milwaukee,* 746 F.2d 1205, 1269 & ns. 76 & 77 (7th Cir. 1984), neither the Seventh Circuit nor any other court of which this one is aware has held that municipalities are entirely exempt from liability under § 1985(3). *See Hobson v. Wilson,* 737 F.2d 1, 16–19 (D.C.Cir.1984) (District of Columbia could be held liable under § 1985(3)); *Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.1979), *cited in, Bell,* 746 F.2d at 1269 n. 77.

Of course, this still leaves the problem that if the only real defendant is the Village, then there appears to be only one conspirator, and one conspirator does not a conspiracy make. But that argument was put to rest, at least tangentially, in *Volk v. Coler,* 845 F.2d at 1435. There the court held that intraenterprise conspiracies give rise to liability under § 1985(3) where various individuals, though part of the same entity, engage in separate and discrete acts in furtherance of an unlawful scheme.

The holding in *Volk* addressed claims against individual defendants, so it is not directly controlling here. But its logic is. If individuals in a single entity can violate § 1985(3), and if the entity can be liable for the acts of its individual members, then it follows that a single entity can be sued for

---

**2.** Of course, § 1985(3) differs from Title VII in that the former requires a conspiracy to discriminate. *See Quinones v. Szorc,* 771 F.2d 289, 291 (7th Cir.1985); *Munson v. Friske,* 754 F.2d 683, 694 (7th Cir.1985). Although the defendants do not explicitly argue that plaintiff has failed to allege concerted action by the defendants, it could be that their challenge to the § 1985(3) claim is grounded, at least in part, on the unlikelihood that Langel, a woman, would conspire to discriminate against another woman on the basis of sex. Yet, if the defendants believe that the complaint fails to allege a discriminatory motive on Langel's part, they should have moved to dismiss the Title VII claim against her. In any case, the complaint does allege that Langel conspired with the mayor and the trustees to discriminate against plaintiff because of plaintiff's rejection of the mayor's sexual advances. While these allegations may run counter to logic, they do state a claim for which relief may be granted.

violations of § 1985(3) by its members.[3] *See Owens v. Haas*, 601 F.2d at 1247; *Eiland v. Hardesty*, 564 F.Supp. 930, 934–35 (N.D.Ill.1982). *But see Scott v. Overland Park*, 595 F.Supp. 520, 527 (D.Kan.1984) (§ 1985(3) plaintiff could sue city employees in their individual but not their official capacities). Accordingly, this court finds that plaintiff has alleged a valid § 1985(3) claim against the defendants in their official capacities.[4]

*Libel*

Count III of the complaint alleges that Mayor Schrimpf committed libel per se in his statements to the Board and to the press regarding plaintiff's work for the Village. The mayor has moved for dismissal of this claim on the grounds that he is protected by the defense of absolute immunity because he made his statements as chief executive officer of the Village, and that the statements were not, in any case, libelous.

█] Plaintiff concedes that the absolute privilege is available to Mayor Schrimpf for statements he makes in the course of his executive functions, *see Blair v. Walker*, 64 Ill.2d 1, 349 N.E.2d 385 (1976), but argues that the statements at issue here fall outside the scope of this privilege. According to plaintiff, the mayor's statements were made, not in the furtherance of his job as mayor, but instead to impugn plaintiff in retaliation for her charges of discrimination against him.

With respect to the statements reported in the May 18 article, there is no question that they fell within the mayor's executive functions. The statements were all made to the Village Board, and were part of a discussion regarding plaintiff's resignation from office. Whether or not these statements were false, indeed whether or not the mayor knew them to be false, is therefore irrelevant. *See Blair*, 64 Ill.2d at 5–6, 349 N.E.2d 385. The mayor had the right to say them, and cannot be held liable for doing so. *Loniello v. Fitzgerald*, 42 Ill. App.3d 900, 1 Ill.Dec. 560, 356 N.E.2d 842 (1976).

█] The statements reported in the August 10 and August 12 articles present a somewhat more difficult question in terms of the mayor's absolute privilege defense. Although the Illinois Supreme Court held in *Blair* that the governor's statements in a press release were absolutely privileged, the Court noted that the question was a "close one," 64 Ill.2d at 9, 349 N.E.2d 385 (quoting *Barr v. Matteo*, 360 U.S. 564, 574, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959)), and expressly limited the privilege to "statements which are legitimately related to matters committed to [the official's] responsibility." 64 Ill.2d at 10, 349 N.E.2d 385.

Mayor Schrimpf's remarks to Kuyper fall extremely close to, if they do not actually cross, the border of his responsibilities. In these statements, he was not telling the Board, nor the citizens of the Village, why plaintiff left office; instead, the mayor was responding to plaintiff's discrimination charges against him.

This court, however, need not decide whether the mayor could be held liable for

---

**3.** This logic fails if the fact that employees are all working in furtherance of a single policy, practice or custom means that they are working as a single entity and therefore cannot conspire under § 1985(3). But in *Volk* the Seventh Circuit indicated that the focus in a § 1985(3) intra-enterprise conspiracy claim is on the acts of the conspirators, not on the source of the discriminatory policy they are following. 845 F.2d 1434–35. Thus, *Volk* suggests that where individuals are engaging in separate and distinct acts in furtherance of an entity's discriminatory policy, they may still be subject to liability.

**4.** Plaintiff may decide to amend her pleadings to allege individual capacity claims against the defendants. If she does, she should be sure to clarify whether she means to sue the defendants in their individual capacities alone or in their official capacities as well. She should also make clear whether the individual capacity allegations go only to the § 1985(3) claim, or also to the Title VII claim. (If the latter, she would do well to recall the following: that she can get no greater relief under Title VII against the individuals than she can against the Village; that there is some doubt whether individuals can be held personally liable under Title VII; that, even if they can be, she may have a problem bringing the unnamed defendants into the Title VII claim; and that, in any case, the motions that would surely follow would further delay this case from reaching the merits.)

**1344**

statements made in this context. For a reading of the August 10 and August 12 articles reveals that none of the statements reported in them stated that plaintiff had committed a crime. Although the August articles did discuss the earlier accusations against plaintiff, the statements made by the mayor all related to possible additional charges that might be pursued against plaintiff, noted that an investigation was ongoing, and specified that only procedural irregularities, not crimes, were suspected. Plaintiff has not alleged that such statements were untrue (and even admitted to the author of the August 12 article that they had some merit). Accordingly, plaintiff has not stated a claim for libel under Illinois law.

## CONCLUSION

The defendants' motion to dismiss Counts I and II is denied. The motion to dismiss Count III is granted.